**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND AND ARTHUR H. BUNTE, JR.,<br><br>    PLAINTIFFS,<br><br>v.<br><br>VANGUARD SERVICES, INC., DRIVERS, INC., VANGUARD SOUTHEAST, INC., VMT VANGUARD COMPANIES, INC., VANGUARD SERVICES (CANADA), INC., VANGUARD OF DELAWARE, INC., CROSSTONE, LLC, PINERIDGE INSURANCE CO., INC., V.O. FREIGHT SERVICES, INC.,<br><br>    DEFENDANTS,<br><br>AND<br><br>WISE ALLOYS, LLC, AS ASSIGNEE AND SUCCESSOR IN INTEREST TO REYNOLDS METALS CO.,<br><br>    CITATION RESPONDENT. | No. 09 C 4721<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

On February 24, 2015, the Court granted the plaintiffs' motion to enforce an indemnification agreement between Vanguard Services, Inc. ("Vanguard") and citation respondent Wise Alloys, LLC ("Wise"). R. 73 (*Centr. States, S.E. and S.W. Areas Pension Fund v. Vanguard Serv., Inc.*, No. 09 C 4721, 2015 WL 791497, at *1 (N.D. Ill. Feb. 24, 2015)). The Court deferred ruling on damages pending further briefing from the parties, *id.* at *7, which is now complete. For the following

reasons, the Court concludes that the plaintiffs are entitled to $300,404.69, plus statutory prejudgment interest.

## BACKGROUND

Plaintiffs, Central States Fund, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr. ("the Pension Fund") brought this action against Vanguard[1] to collect contributions and withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. R. 1. Vanguard is in the business of leasing personnel to other companies to assist in their day-to-day operations. *Vanguard*, 2015 WL 791497, at *1. In connection with that service, Vanguard executes collective bargaining agreements with local unions. *Id.* Pursuant to the collective bargaining agreements, Vanguard must make contributions to the Pension Fund on behalf of the leased employees. *Id.* In 1989, Vanguard entered into a labor-leasing agreement with Reynolds Metal Company ("Reynolds"). *Id.* The parties' agreement included a provision ("Schedule C") requiring Reynolds to indemnify Vanguard for "unfunded pension liability":

> Customer [Reynolds] agrees to defend, indemnify and hold Vanguard harmless from any unfunded pension liability that might be assessed against Vanguard under any collective bargaining or participation agreement as a result of supplying leased employees to any of Customer's terminals.

---

[1] Defendants Driver's, Inc., Vanguard Southeast, Inc., V.M.T. Vanguard Companies, Inc., and Vanguard Services (Canada), Inc., are wholly-owned subsidiaries of Vanguard. R. 1 ¶¶ 11-14. Defendants CrossStone, LLC, Pineridge Insurance Co., Inc., and V.O. Freight Services, Inc. are wholly-owned subsidiaries of Vanguard of Delaware, Inc. *Id.* ¶¶ 16-18.

*Id.* at *2. On December 30, 1998, Wise purchased Reynolds's Muscle Shoals metal-alloy plant, and assumed Reynolds's agreement with Vanguard. *Id.* at *2-3.

Vanguard triggered a complete withdrawal from the Pension Fund in 2008, requiring it to pay withdrawal liability to the Pension Fund. *See* 29 U.S.C. §§ 1383, 1399. On August 4, 2009, the Pension Fund filed this lawsuit to collect Vanguard's withdrawal liability and certain unpaid contributions. R. 1. On August 11, 2009, Judge Lindberg, the presiding judge at that time, entered a consent judgment against Vanguard requiring it to pay withdrawal liability of $4,769,353.60, plus post-judgment interest. R. 9 at 7. On September 2, 2011, the Pension Fund filed citations to discover assets against Wise and CMM Transportation, Inc. (another Vanguard client) to enforce the indemnification provisions of their labor-leasing contracts with Vanguard. R. 10. On September 19, 2012, Judge Lindberg granted the Pension Fund's motion to enforce CMM's duty to indemnify and ordered the company to pay the Fund $40,238.68 "plus interest at the rate set forth in the [Pension Fund's] Trust Agreement." R. 67 at 2. The Pension Fund's motion to enforce the indemnification agreement against Wise was pending when the case was reassigned to the undersigned judge. *See* R. 11, 68-69. On February 24, 2015, the Court granted the Pension Fund's motion. *See Vanguard*, 2015 WL 791497, *7.

The Pension Fund states that it maintained separate contribution accounts for each of Vanguard's leasing arrangements. R. 77 at 2; *see also* R. 72 ¶ 19 (Aff. of Andrew Sprau in Supp. of Post-J. Mot. to Enforce Indem. Agmt.). Using that information, the Pension Fund has calculated Wise's share of Vanguard's

withdrawal liability based upon the percentage of Vanguard's total contributions to the Pension Fund over a ten-year period attributable to Vanguard employees working for Reynolds/Wise. R. 72 ¶¶ 18-19. Over that time period, Vanguard contributed $2,506,126.00 to the Pension Fund, of which $157,852.00 (or 6.3%) was attributable to contributions made on behalf of covered employees performing work for Reynolds/Wise. *Id*. The Pension Fund seeks $300,404.69 (6.3% of the $4,769,353.60 judgment against Vanguard) from Wise, "plus interest at the rate provided by the [Pension Fund's] Trust Agreement." R. 77 at 1. Applying that rate, the Pension Fund calculates that Wise owes the Fund $98,207.06 in interest for the period January 23, 2009 (the date on which the Fund alleges that Vanguard demanded indemnification from Wise) through April 13, 2015. *See* R. 77-1 ¶ 4 (Aff. of Andrew Sprau, dated April 10, 2015); R. 77 at 2.

## ANALYSIS

### I. Wise's Share of Vanguard's Withdrawal Liability

Wise argues that the Pension Fund has not satisfied its burden to calculate its damages "to a reasonable degree of certainty." *TAS Dist. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007); *see also* R. 80-1 at 2. Specifically, Wise argues that the Pension Fund has not: (1) pinpointed the particular date on which Vanguard withdrew from the Fund; and (2) explained the basis for the 10-year damages period underlying its calculation. R. 80-1 at 3. On that basis, Wise asks to the Court to award no more than nominal damages. *Id.* at 2; *see also TAS Dist.*, 491 F.3d at 632 ("[W]hen a party establishes that it is entitled to damages but

fails to prove the amount of those damages to a reasonable degree of certainty, only nominal damages are recoverable at the discretion of the trial judge.").

Contrary to Wise's argument, the Fund's damages are fixed and certain. Pursuant to Schedule C, Wise is liable for "any unfunded pension liability that might be assessed against Vanguard under any collective bargaining or participation agreement as a result of supplying leased employees to [Wise]." *Vanguard*, 2015 WL 791497, at *2. Pursuant to the consent judgment, Vanguard's "unfunded pension liability" is $4,769,353.60. R. 9 at 7. Wise may not relitigate Vanguard's unfunded pension liability after it has been assessed. The method the Pension Fund used to calculate Wise's share of Vanguard's "unfunded pension liability" is reasonable, and Wise has not challenged the calculation itself. Thus, Wise must pay the Pension Fund $300,404.69.

## II. Contractual Interest

The Pension Fund argues that it is entitled to interest at the rate for withdrawal liability imposed by its Trust Agreement[2] from January 23, 2009—the date it contends Vanguard "demanded" indemnification from Wise—to the present. *See* R. 77 at 2-3. In support of its argument, the Pension Fund cites cases imposing interest as a mandatory component of withdrawal liability under ERISA. *See, e.g., Centr. States, S.E. and S.W. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992) (interest is "mandatory" in successful suits to enforce ERISA's

---

[2] According to the Pension Fund, the applicable rate is "2% plus the prime interest rate established by JPMorgan Chase Bank, NA for the 15th day of the month for which interest is charged, compounded annually." R. 77 at 3.

withdrawal liability provisions (citing 29 U.S.C. §§ 1381, 1399, 1451)); *see also* R. 79 at 4. But Wise's liability in this case arises from the indemnification agreement, not ERISA. *See Vanguard*, 2015 WL 791497, at *4 (rejecting as irrelevant Wise's argument that it is not an "employer" under ERISA because its liability arises from contract law). Under Illinois law, indemnification agreements are "strictly construed." *See Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 928 (7th Cir. 2015) (Under Illinois law, "indemnity contracts are to be strictly construed, and any ambiguity in the agreement is to be construed most strongly against the indemnitee."). The indemnification agreement refers to "unfunded pension liability," which the parties tacitly agree encompasses the judgment that the Court entered against Vanguard. But it does not clearly encompass interest on that amount.[3] The parties could have made Reynolds/Wise expressly liable for interest, or else used catch-all language encompassing that obligation (as it did in a separate section of Schedule C). *See* R. 72-4 at 6 (requiring Reynolds/Wise to indemnify Vanguard "from *any expense, loss, damage, claim or liability* whatsoever arising out of or relating to any violation by Vanguard of such collective bargaining agreement and the commission of any unfair labor practice by Vanguard, its employees or agents"). But they did not do so. The Court is not persuaded by the Pension Fund's argument that Vanguard must have intended for Wise to indemnify it for any and all liability

---

[3] As far as the Court can tell, CMM did not challenge the Pension Fund's demand for interest calculated at the rate provided in the Trust Agreement. *See* R. 47, 57. So, understandably, Judge Lindberg did not explain why he applied that rate to CMM's share of Vanguard's withdrawal liability. *See* R. 67 at 2. Wise is not bound by CMM's apparent waiver of its right to challenge the Fund's interest calculation.

"arising out of or relating to" unfunded pension liability. *See* R. 79 at 5. "Contract law depends not on private and unexpressed intentions but on objective expressions of intent and agreement." *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124, 1130 (7th Cir. 2014). The Court concludes that the Pension Fund is not entitled to interest at the rate provided in its Trust Agreement.

## III. Statutory Interest

The Pension Fund has also asserted a claim for prejudgment interest under the Illinois Interest Act. *See* R. 79 at 4-5. The Interest Act permits prejudgment interest "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing . . . ." 815 ILCS 205/2. "To demonstrate debt on an 'instrument of writing,' a creditor must establish three elements: (1) a written instrument that establishes indebtedness; (2) a specific or inherent due date; and (3) that the indebtedness is subject to easy calculation." *PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004). Wise argues that the indemnification agreement is not an "instrument of writing" because it is not a "bond, bill, [or] promissory note," and argues that the catchall provision ("other instrument of writing") should be construed to encompass only agreements similar to those specifically identified in the statute. *See* R. 81. at 2. The Seventh Circuit has interpreted the phrase "other instrument of writing" broadly. *See, e.g., Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 355 (7th Cir. 2010) (an insurance policy is an "instrument of writing" under the Interest Act); *PPM Finance*, 392 F.3d at 985 (a subordination agreement is an "instrument of

writing" under the Interest Act); *Ameritech Info. Sys., Inc. v. Bar Code Res., Inc.*, 331 F.3d 571, 575 (7th Cir. 2003) (construction contracts are "instruments of writing" under the Interest Act). Schedule C of the labor-leasing agreement between Vanguard and Reynolds/Wise clearly "establishes indebtedness." *PPM Finance*, 392 F.3d at 895. The fact that other portions of the agreement deal with labor-leasing is irrelevant. *Cf.* R. 81 at 2. Schedule C also contains an "inherent" due date: when "unpaid pension liability" is "assessed against Vanguard under any collective bargaining or participation agreement as a result of supplying leased employees to any of Customer's terminals." *See PPM Finance*, 392 F.3d at 895 (concluding that the inherent due date of the subordinated creditor's obligation to the senior creditor was the debtor's default). Finally, the indebtedness is subject to "easy calculation." *Id*. Vanguard's "unfunded pension liability" is $4,769,353.60. R. 9 at 7. Wise's share of that judgment is simply the percentage of Vanguard's total withdrawal liability attributable to Vanguard employees working for Wise. *Id*.

The Court concludes that prejudgment interest, calculated at the statutory rate of 5% per annum, is appropriate. *See* 815 ILCS 205/2. Prejudgment interest begins to accrue when the judgment-debtor's obligation becomes "liquidated, i.e., due and capable of exact computation." *Santa's Best*, 611 F.3d at 355 (citation and internal quotation marks omitted). The Pension Fund argues that interest should be calculated from January 23, 2009, when Vanguard sent Wise a letter "demanding" indemnification. R. 77 at 2. Vanguard did not "demand" contribution from Wise at that time. Its letter recited Wise's "estimated" liability, and stated that

Vanguard expected Wise to pay its share of Vanguard's liability after Vanguard received a "final demand letter from the Fund." *See* R. 43-10 at 2. On September 2, 2011, the Pension Fund demanded payment from Wise in the amount it currently seeks. *See* R. 13, Aff. of Andrew Sprau, dated Sept. 2, 2011, ¶¶ 18-19 (explaining the Fund's methodology for calculating Wise's share of Vanguard's unfunded pension liability); *see also id.* at ¶ 20 ("I have calculated Wise's pro rata share of the Withdrawal Liability as $300,404.69 (6.3% of $4,769,353.60 equals $300,404.69."). The Court concludes that Wise's liability under the indemnification agreement became liquidated on that date.

## CONCLUSION

The Court will enter judgment in favor of the plaintiffs, and against Wise, in the amount of $300,404.69, plus statutory interest of 5% per annum from September 2, 2011 to the present. Without any party waiving its right to appeal any portion of the Court's ruling, the parties shall jointly file a revised interest calculation consistent with the Court's opinion by June 15, 2015.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: June 8, 2015