UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND AND CHARLES WHOBREY, Trustee, </br></br>Plaintiffs,</br></br>v.</br></br>VANGUARD SERVICES, INC., et al.,</br></br>Defendants,</br></br>and</br></br>BRIDGESTONE/FIRESTONE, INC.,</br></br>Citation Respondent. | 09 C 4721</br></br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Central States Fund, Southeast and Southwest Area Pension Fund and Howard McDougall's ("Pension Fund's") motion for reconsideration of the Court's October 30, 2020 order dismissing without prejudice the citation to discover the assets of Bridgestone Americas Tire Operations, LLC, successor in interest to Bridgestone/Firestone, Inc. ("BATO"). R. 113. For the reasons that follow, that motion is denied, but the citation may be reissued because the Pension Fund has standing to pursue the indemnification claims in dispute.

**Background**[1]

Years ago, the Pension Fund brought this action against Vanguard Services, Inc. and other Vanguard entities (together, "Vanguard") for collection of contributions and withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. R. 1. Vanguard—which previously operated as a labor leasing company—and the Pension Fund subsequently entered into a settlement agreement pursuant to which Vanguard agreed to a consent judgment (such agreement, the "Settlement Agreement," and such judgment, the "Consent Judgment"). The Settlement Agreement grants the Pension Fund a first position security interest in any claims Vanguard has against its former clients under the labor leasing agreements between them. Some of those labor leasing agreements require Vanguard's clients to indemnify Vanguard against withdrawal liability under certain circumstances. BATO is a former Vanguard client with such an indemnification provision.

Once the Settlement Agreement was signed, the Consent Judgment was entered and Vanguard was ordered to pay in excess of $4.75 million in unfunded pension withdrawal liability. R. 9. But because the Pension Fund agreed as part of the Settlement Agreement "not to execute the Consent Judgment or enforce against, or otherwise attempt to collect any monies due under the Consent Judgment from [Vanguard]," the Pension Fund sought to enforce the various indemnification

---

[1] For additional background facts, see the Court's October 30, 2020 Memorandum Opinion and Order granting BATO's motion to dismiss the citation against it. R. 112.

provisions against Vanguard's former clients directly (an action the Settlement Agreement expressly permits). *See* R. 93-2 at 13 (noting that the Pension Fund was not barred "from taking any act to assert claims under the Lease Agreements including post-judgment discovery and taking action against third-parties"). The Pension Fund has issued post-judgment citations to discover assets to Vanguard's former clients in order to satisfy the Consent Judgment. It has been successful with respect to each former Vanguard client/citation respondent pursued thus far.

Most recently, the Pension Fund sought to enforce the indemnification provisions in the labor leasing agreements between Vanguard and BATO, pursuant to which the Pension Fund contends BATO is responsible for the vast majority of Vanguard's withdrawal liability. A citation to discover assets was issued to BATO for that purpose (the "Citation"). R. 103. But BATO moved to dismiss the Citation, arguing among other things that the Pension Fund lacked standing to pursue the indemnification claims, which had since become assets of Vanguard's successor's Chapter 7 bankruptcy estate, and thus could be pursued by the bankruptcy trustee alone. R. 107.

Ultimately, this Court concluded that: (1) Vanguard had not assigned the indemnification claims to the Pension Fund; and (2) the claims were part of Vanguard's successor's bankruptcy estate, and therefore subject to the automatic stay applicable under § 362 of the bankruptcy code. R. 112 at 16-17. The Court further held that although the bankruptcy trustee had agreed to an order that if entered would have lifted the automatic stay to allow the Pension Fund to pursue the claims

3

("lift-stay order"), there was no evidence or argument that the order had been entered. *Id.* Accordingly, the Court dismissed the Citation, but did so without prejudice to the Pension Fund's reinitiating its request for the Citation if it could demonstrate that the lift-stay order had been entered. *Id.* at 17-18.

The Pension Fund now moves for reconsideration of that dismissal, attaching the bankruptcy court's August 18, 2018 entry of the lift-stay order just days after the trustee had agreed to the same. R. 113.

**Discussion**

Generally, motions to reconsider are disfavored, and appropriate only to "correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996). They are proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). But they are not "appropriate vehicle[s] for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine v. Burge*, 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Caisse*, 90 F.3d at 1270).

BATO contends that the Pension Fund's motion for reconsideration is procedurally improper, because the lift-stay order was entered well before the parties briefed the motion to dismiss the Citation, and therefore the issue could have been

4

raised in response to that motion and may not be raised now via the current one. The Pension Fund counters that its motion is proper because it aims to correct a "misunderstanding of fact" about what happened before the bankruptcy court. But because any "misunderstanding" was due to the Pension Fund's failure to provide the information in the first place, the Court sides with BATO on this point, and thus concludes that relief on this basis is not proper—at least as a technical matter.

Nevertheless, it is the Court's preference to resolve issues on their merits. And as stated, the Court specifically invited the Pension Fund to re-raise the standing issue if appropriate when it dismissed the Citation. Because the parties have fully briefed the issue in the context of the present motion, the Court now examines the merits of their arguments against the backdrop of the newly-disclosed facts.

Predictably, the Pension Fund argues that the evidence of the lift-stay order cures the standing issue. But while BATO does not dispute that the lift-stay order was entered, it argues that the Pension Fund also had to seek derivative standing to pursue the indemnification claims. More specifically, BATO contends that the bankruptcy trustee has exclusive standing to pursue claims belonging to the bankruptcy estate unless and until the bankruptcy court bestows derivative standing on a creditor to do so. BATO points out that in this case, derivative standing was neither sought nor granted, and cites *Schaumberg Bank & Trust Company, N.A. v. Alsterda*, 2015 WL 1502927 (N.D. Ill. Mar. 26, 2015) in support. R. 115 at 5-6. There, the court held that the creditor could not pursue the fraudulent transfer claim even though the bankruptcy court had modified the automatic stay as to the creditor

5

because the creditor had not also sought derivative standing to pursue the claim in the trustee's stead. *See Alsterda*, 2015 WL 1502927, at *2 (holding that the "Bankruptcy Court still must grant derivative standing to pursue the avoidance of fraudulent transfers" even though "relief from an automatic stay has been granted").

In response, the Pension Fund contends that *Alsterda* is inapposite, including because it concerned a creditor's ability to pursue a fraudulent transfer claim, which the Pension Fund argues is a "general" claim that is beneficial to *all* creditors, unlike the indemnification claims at issue here. R. 117 at 4, 6-7. To that point, the Seventh Circuit in *Koch Refining v. Farmers Union Central Exchange, Inc.* held that a trustee may maintain a "general claim" that concerns "allegations that could be asserted by any creditor," but "has no standing to bring *personal* claims of creditors." 831 F.2d 1339, 1348-49 (7th Cir. 1987) (emphasis in original). The court continued that a claim is "personal" if "the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Id.* at 1349. The Pension Fund contends that the indemnification claims are "unique" to it because "no other creditor did (or could have) asserted indemnification claims for withdrawal liability." R. 117 at 4. But ultimately, the Court need not resolve the issue. Indeed, even assuming the Pension Fund was required to seek and obtain derivative standing to pursue the indemnification claims while the bankruptcy case was ongoing, the Court understands from the Pension Fund's reply brief that the bankruptcy case has since closed. *See id.* at 6 (indicating that the bankruptcy case "has been closed for over a year"). Accordingly, the issue of derivative standing is moot, because the claims are now abandoned, even assuming

6

they were exclusively the trustee's to pursue in the first place. *See* 11 U.S.C. § 554(c) (estate property that is scheduled but not administered before a bankruptcy case is closed is considered abandoned to the debtor). The Pension Fund may reissue the citation to discover assets as to BATO.

## Conclusion

For the reasons stated, the Pension Fund's motion to reconsider is denied, R. 113, but the citation to discover BATO's assets may be reissued so that the Pension Fund can pursue the indemnification claims.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: December 10, 2020